# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FLORENCE,<br><br>   Plaintiff,<br><br> v.<br><br>S. KERNAN, et al.,<br><br>   Defendants. | **Case No. 1:18-cv-01045-AWI-JLT (PC)**<br><br>**ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT NUNC PRO TUNC**<br>**(Doc. 17)**<br><br>**ORDER FOR PLAINTIFF'S LODGED SECOND AMENDED COMPLAINT TO BE FILED AND RENAMED "THIRD AMENDED COMPLAINT"**<br>**(Doc. 18)**<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS FOR FAILURE TO STATE A CLAIM AND TO DENY MOTION FOR TEMPORARY RESTRAINING ORDER (Doc. 15)**<br><br>**21-DAY DEADLINE** |

  The Court screened Plaintiff's First Amended Complaint and found it did not comply with the Federal Rules of Civil Procedure. (Doc. 13.) The Court granted leave to file a second amended complaint and directed Plaintiff to choose which claims he would pursue in this action. (*Id.*, pp. 4-5.) Plaintiff filed a second amended complaint on October 9, 2019. (Doc. 16.) Then, on October 22, 2018, Plaintiff filed another document titled as a second amended complaint which was lodged (Doc. 17) and a motion for leave to file it late (Doc. 18).

  The Court advised Plaintiff that an amended complaint supersedes prior versions. (Doc. 13, p. 14 (citing *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1

1

n.1 (9th Cir. Aug. 29, 2012) (en banc).) Accordingly, Plaintiff's motion for leave to file his amended complaint late is GRANTED and the document lodged as a second amended complaint (Doc. 18) will be filed, renamed as Plaintiff's "Third Amended Complaint," and screened. All of Plaintiff's claims in the TAC are premised on revocation of his conjugal, overnight Family Visiting Privileges (FVP) in 2017. Plaintiff does not have a right to FVP and none of his claims thereon are cognizable. Thus, this action should be **DISMISSED**.

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A complaint will be dismissed if it lacks a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

### B. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual

allegations are accepted as true, but legal conclusions are not. *Iqbal,* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief, *Johnson v. City of Shelby*, __ U.S. __, 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

**C.    The Third Amended Complaint**

Plaintiff names CDCR Secretary S. Kernan, Director K. Allison, CCII B. McKinney, Associate Warden B. Cates, and Chief Deputy Warden B. Kibler as Defendants. Plaintiff seeks monetary and declaratory relief based on a 2017 decision which denied/revoked Plaintiff's FVP.

Plaintiff alleges that, on August 9, 2017, when Plaintiff returned from being out-to-court, CCII McKinney and a CCI (not named as a defendant) filed a CDC-128-G Chrono finding Plaintiff ineligible for FVP under Title 15 of the California Code of Regulations section 3177(b)(1) since one of the victims of Plaintiff's crimes was a minor. (Doc. 18, p. 4.) Plaintiff received another CDC-128-G Chrono, dated November 1, 2017, from CCII McKiney and AW B. Cates, finding that on August 9, 2017, Plaintiff appeared before the UCC and was denied FVP due to a review of Plaintiff's June 21, 1995 Probation Officer Report (POR). (*Id.*)

The POR stated that "Plaintiff and Co-defendant fired approximately 30 rounds into a

3

crowd in front of a house, two were killed, including a two-year-old baby and three others injured. Per CCR Title 15 3177(b)(1) family visits shall not be permitted to inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to the following Penal Code Section 187." (*Id.*)

Plaintiff thereafter filed an inmate appeal against all five Defendants for discriminating against him by revoking/denying him FVP while other inmates, who Plaintiff alleges are similarly situated since serving life and LWOP sentences for first degree murder, are allowed to have FVP. (*Id.*) Defendants CCII McKiney and AW Cates denied Plaintiff's appeal based on their interpretation of 25 different California Penal Code sections. Plaintiff told them that none of those sections applied to him; rather they "referred to inmates who were convicted of child molestation, rape, sodomy, and then killing a minor." (*Id.*, at p. 5.) Plaintiff told them that, "prior to CDC taking the family visits from lifer's in 1997, Plaintiff was able to go on family visits and regular visits with minors and Plaintiff was Close-A Custody, which is one of the most restrictive custody groups in General Population and there was never a problem." (*Id.*)

On November 16, 2017, Plaintiff received the Second Level Review on his inmate appeal from CDW B. Kibler which indicated that all of Plaintiff's documentation had been considered and reviewed in accordance with departmental policies and institutional procedures. (Doc. 18, p. 5.) It noted the same information from the June 21, 1995 POR as reflected in the November 1, 2017 Classification Committee Chrono (CCC). (*Id.*, at p. 6.) The SLR denied Plaintiff's appeal based on a finding that § 3177(b)(1) prohibits FVP for inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to Penal Code 187. (*Id.*)

Plaintiff pursued his inmate appeal to the Third Level Review and received that decision on April 16, 2018. (Doc. 18, p. 6.) The TLR decision stated that FVP is a privilege, as such participation depends upon the degree of the threat presented to the visitors involved. (*Id.*) The TLR concurred with the denial of Plaintiff's FVP as examined in the SLR. Plaintiff's request for FVP was denied based on the circumstances of Plaintiff's crime, noting that one of his victims was a minor. (*Id.*)

4

Plaintiff alleges that because he is serving a sentence of LWOP, it was unnecessary for staff to review his case to ascertain whether he was eligible for FVP. However, Plaintiff alleges that recent changes in CDC FVP policy allows LWOP inmates to have FVP if they meet certain criteria. (*Id.*, at p. 4.)

Plaintiff further alleges that in 2007, CSP-Sac UCC placed restrictions on Plaintiff's contact visits with minors, but in 2010, the ICC committee did an "extensive background investigation into the factors of Plaintiff's conviction and contact visits with minors and concluded he was not a threat and restored his contact visits with minors." (Doc. 18, p. 5.) Plaintiff states that, in 2017, CDC changed their policy on FVP which allowed inmates with life and LWOP sentences to have FVP. But Plaintiff alleges it should not restrict his ability to have FVP because the change was "implemented to restrict child molesters from being around kids." (*Id.*)

Plaintiff alleges that the denial/revocation of his FVP violated his rights to Equal Protection under the Fourteenth Amendment and constituted retaliation under the First Amendment. As discussed in detail below, Plaintiff does not have a cognizable right to FVP. Hence, Plaintiff is unable to state a cognizable equal protection or retaliation claim based on denial/revocation thereof such that this action should be dismissed.

**D.** **<u>Claims for Relief</u>**

    **1.** **Visitation**

In *Overton v. Bazzetta*, the Supreme Court considered a substantive due process claim challenging various prison regulations restricting prisoners' rights to receive visits from family members. 539 U.S. 126, 129-30 (2003). The Court's own hesitation in articulating the existence and nature of an inmate's right to receive visits from family members while in prison is instructive. *Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010). The Court acknowledged that "outside the prison context, there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents." *Overton* at 131. The Court, however, declined to "attempt to explore or define the asserted right of association at any length or

determine the extent to which it survives incarceration." *Id*. at 132. At the same time, the Court observed that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights least compatible with incarceration." *Id*. at 131 (emphasis added). Further, despite how "severe[ly]" the prison regulations at issue in *Overton* restricted the prisoners' right to receive visits from their own family, including minors, *id*. at 134, the Court upheld the constitutionality of the challenged regulations, *id*. at 136-37. The denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995).

The Court's failure to recognize an absolute right to receive visitors in prison, to a certain extent, necessarily flows from the nature of prison, the goals it serves, and the deference owed to prison administrators in effectuating those goals. *Dunn v. Castro*, 621 F.3d 1196, 1203, 1205 (9th Cir. 2010). Prison serves the important purpose of deterring crime. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses." *Id*.; *see also Rhodes v. Chapman*, 452 U.S. 337, 352 (1981) (identifying the deterrence of future crime among the "goals of the penal function in the criminal justice system").

To that end, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *Pell*, 417 U.S. at 822 (internal quotation marks omitted) (alteration in original), including the right to associate with individuals with whom an inmate would otherwise enjoy close personal and professional relations outside of the prison context. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977) ("Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution."). In *Overton*, the Court reiterated the "substantial deference [courts must accord] to the professional judgment of prison administrators, who bear a significant

responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." 539 U.S. at 132.

The Ninth Circuit has declined to recognize a prisoner's constitutional right to receive visits, stating that "it is well-settled that prisoners have no constitutional right while incarcerated to contact visits." *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc); *see also Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal of prisoner's claim challenging regulation that denied him visits from persons other than his immediate family); *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam) (holding that prisoners do not have a constitutional right to contact visitation privileges); *Toussaint v. McCarthy*, 801 F.2d 1080, 1114 (9th Cir.1986) ("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society."), abrogated in part on other grounds by *Sandin*. Thus, Plaintiff has no right to FVP.

### 2. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439(1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Plaintiff fails to state any allegations to show that he was discriminated against based on his membership in a protected class.

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch*

*Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008), *see also Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004); *Sea River Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. Further, to establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano*, 345 F.3d at 1081-82; *Freeman v. Arpio*, 125 F.3d 732, 737 (9th Cir. 1997).

Plaintiff alleges that "other inmates who are serving life and LWOP sentences for first degree murder, . . . have conjugal, overnight visits." (Doc. 18, pp. 4-5.) Plaintiff contends that those inmates are similarly situated to him to meet the second element. However, "[a]n equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff," *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (quotations and citation omitted), which is all that Plaintiff has alleged here. Furthermore, just because other inmates have the same or similar sentence, does not mean that their convictions are for similar crimes. Plaintiff's premise, that all inmates serving life and LWOP sentences are similarly situated to him, is not facially plausible since there are numerous violent crimes for which a life or LWOP sentence may be imposed that do not involve minors, family members, or sex offenses.

Additionally, though Plaintiff's allegations attempt to show that there is no rational basis for the prison denying him conjugal visits, while others serving life or LWOP get this privilege, the Supreme Court has found a valid rational connection between an outright ban on contact visits and internal security of a detention facility (let alone a ban that applies only to prison inmates convicted of certain violent crimes involving a minor, a family member, or a sex offense as addressed here) "is too obvious to warrant extended discussion." *Block v. Rutherford*, 468 U.S. 576, 586-87 (1984). Further, when addressing whether prison officials' acts bear a rational

8

relation to a legitimate penological interest, "substantial deference" must be accorded to the professional judgment of administrators, "who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 131-132 (2003) *ref Pell*, 417 U.S. at 826-827; *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326 (2012); *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126, 128 (1977); *Turner*, 482 U.S. at 85, 89; *Block v. Rutherford*, 468 U.S. 576, 588 (1984); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132; *ref Jones*, 433 U.S. at 128; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Shaw v. Murphy*, 532 U.S. 223, 232 (2001).

Plaintiff cannot allege any facts to show that the safety and protection of visitors, inmates, and prison personnel is not a legitimate goal for which prison officials should be accorded substantial deference; nor that there is no rational basis for inmates convicted under Penal Code 187 where a victim was a minor, a family member, or involved a sex offense to be prohibited from FVP while inmates with similar convictions that did not involve a minor, a family member, or a sex offense are allowed to have FVP.

Likewise, Plaintiff's allegations that there was never a problem "prior to CDC taking the family visits from lifers in 1997, when Plaintiff was able to go on family visits and regular visits with minors and Plaintiff was Closed-A Custody, which is one of the most restrictive custody groups in General Population" do not bear on the legitimacy of the regulations. Though there may have not been a problem with Plaintiff's prior FVP, this does not show that there wasn't a problem with other inmates convicted of similar crimes that warranted revoking the privilege for the safety of visitors and for which prison officials should be accorded substantial deference. Finally, Plaintiff's allegations fail to show any discriminatory intent by any of the Defendants named in this action. *See Washington*, 426 U.S. at 239-240; *Serrano*, 345 F.3d at 1081-82; *Freeman*, 125 F.3d at 737. Thus, Plaintiff's Equal Protection claim is not cognizable.

///

### 3. Retaliation

The First Amendment protects inmates from retaliation for engaging in protected conduct. A retaliation claim has five elements. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009).

First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* Protected conduct for retaliation claims may but need not be tethered to First Amendment speech or associational freedom issues. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013). Rather, "'a claim for retaliation can be based upon the theory that the government imposed a burden on the plaintiff, more generally, because he exercised a constitutional right.'" *Blaisdell*, 729 F.3d at 1242 (quoting *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 545 (1983)). The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech and to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). Even mere threats to file suit, civil or criminal, fall within the purview of the constitutionally protected activities under the First Amendment. *Entler v. Gregoire*, --- F.3d ---, 2017 WL 4448218, *6 (9th Cir. October 6, 2017) (citing *Jones v. Williams*, 791 F.3d 1023, 1035-36 (9th Cir. 2015).

Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. The adverse action need not be a full-fledged independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action. . . ." *Brodheim*, 584 F.3d at 1270. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where action taken by the defendant was clearly adverse to the plaintiff. *See e.g. Rhodes*, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault); *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (validation as a gang member); *Hines*

10

*v. Gomez*, 108 F.3d 265, 267(9th Cir. 1997) (issuance of false rules violation and subsequent finding of guilt); *Pratt*, 65 F.3d at 806 (prison transfer and double-cell status); *Valandingham*, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened); *Rizzo*, 778 F.2d at 530-32 (reassignment out of vocational class and transfer to a different prison).

Third, the plaintiff must allege a causal connection between the first two elements. *Waitson*, 668 F.3d at 1114. "[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2nd 1310, 1314 (9th Cir. 1989) (quoting *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Rather, Plaintiff must show either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the protected conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were false and pretextual. *McCollum v. California Department of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (citing *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted). It is understood that direct evidence of improper motive is only rarely available. *Watison*, 668 F.3d at 1114; *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999).

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were

unnecessary to the maintenance of order in the institution." *Waitson*, 668 F.3d at 1115 (quotations and citations omitted). It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The conduct identified by Plaintiff as retaliatory must have been motivated *by* his engaging in a protected activity, and the conduct complained of must *not* have reasonably advanced a legitimate penological goal. *Brodheim*, 584 F.3d at 1271-72 (citations omitted). Thus, mere allegations that Plaintiff engaged in protected activity, without knowledge resulting in animus by a defendant is insufficient to show that Plaintiff's protected activity was the motivating factor behind a defendant's actions.

The 2017 revocation and denial of Plaintiff's FVP is the precipitating event for all of Plaintiff's claims. However, as discussed previously, Plaintiff was convicted of violations of Penal Code section 187 and one victim was a two-year-old child. Plaintiff's allegations clearly show that the denial/revocation of his family visits was governed by section 3177. Plaintiff alleges that the review of his file which contained the ROP report of the facts underlying his conviction occurred when Plaintiff returned to the facility after being out to court. (*See* Doc. 18, p. 20.) Though Plaintiff alleges that there was no need for prison staff to revisit his visitation allowance when he returned from court, the exhibit shows that Plaintiff's "Annual Review" was also conducted at that time because it had not been "conducted within time constraints based on Administrative error." (*Id.*) The August 9, 2018 CCC notes that the review thus "covers 3 periods from 11/1/15 thru 10/31/16," and that Plaintiff's next annual review was scheduled to occur on November 1, 2017. (*Id.*) The November 1, 2017 annual review CCC likewise denied Plaintiff's request for FVP based on section 3177 and Plaintiff's conviction under Penal Code 187 with a minor victim. (*Id.*, at p. 22.)

Nothing in the Complaint shows or implies that Defendants reviewed Plaintiff's file and revoked his FVP out of animus for Plaintiff's protected activity. Plaintiff had returned to NKSP from being out to court twelve days before the August 9, 2017 CCC issued. But the exhibits

Plaintiff attached to the Complaint make it clear that Plaintiff's FVP was revoked based on 3177(b)(1) and the circumstances of the crimes for which Plaintiff was. Plaintiff's contention that his family visits were revoked on August 9, 2017 and reinstatement was denied on November 1, 2017 because he had recently returned from court amounts to nothing more than mere speculation which, as stated above, is not sufficient. *Wood*, 753 F.3d at 905. Similarly, Plaintiff's allegations do not show "the absence of legitimate correctional goals for the conduct of which he complains." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)). And, as previously stated, there is an obvious valid rational connection between bans and restrictions on contact visits and internal security, *Block*, 468 U.S. at 586-87, and prison officials are entitled to substantial deference in their decisions made for the institutional safety, *Overton*, 539 U.S. at 131-132.

Plaintiff cannot state a cognizable retaliation claim. Revocation and denial of Plaintiff's FVP was supported by Cal. Code Regs. Title 15, § 3177(b)(1) based on Plaintiff's conviction of two counts under Penal Code section 187 since one of the victims was a minor, *see Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), and because restrictions on FVP serves the legitimate penological purpose of maintaining prison safety and discipline, *see Rizzo*, 778 F.2d at 532.

### E. <u>Temporary Restraining Order and Preliminary Injunction</u>

On October 9, 2019, Plaintiff filed a motion for temporary restraining order and preliminary injunction seeking an order prohibiting the integration of GP and SNY inmates at NSKP. (Doc. 15.)

As an initial matter and as previously stated, Plaintiff has not stated a cognizable claim upon which relief may be granted, such that there is no actual case or controversy before the Court at this time, and Court lacks the jurisdiction to issue the order sought by Plaintiff. *Summers v. Earth Island Institute*, 555 U.S. 488, 493-94 (2009); *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1119 (9th Cir. 2009); 18 U.S.C. § 3626(a)(1)(A). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.* Further, requests for prospective relief are limited by 18 U.S.C. § 3626 (a)(1)(A) of the Prison Litigation Reform Act,

which requires that the Court ensure the relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right." Though Plaintiff raises claims based on revocation and denial of FVP in this action, the injunctive relief he seeks relates to integration of GP and SNY inmates on the same yard. Relief for Plaintiff cannot be narrowly drawn as Plaintiff seeks relief that is unrelated to the violations of his rights raised in the Third Amended Complaint.

Plaintiff is not precluded from attempting to state cognizable claims in a new action if he believes his civil rights are being violated beyond his pleadings in this action. The issue is not that Plaintiff's allegations are not serious, or that Plaintiff is not entitled to relief if sought in the proper forum. The seriousness of Plaintiff's allegations of integrating GP and SNY inmates on the same yard cannot and do not overcome what is a *jurisdictional* bar. *Steel Co.*, 523 U.S. at 103-04 ("[The] triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.") This action is simply not the proper vehicle for conveyance of the relief Plaintiff seeks.[1]

## **CONCLUSION**

The Court **ORDERS** that Plaintiff's motion for extension of time to file an amended complaint, filed on October 22, 2018 (Doc. 17), is GRANTED nunc pro tunc. The Clerk of the Court is directed to file the document titled as "Second Amended Complaint" (Doc. 18), which was lodged on October 22, 2018, and rename it "Third Amended Complaint."

Plaintiff's Third Amended Complaint fails to state any cognizable claims. Plaintiff should not be granted leave to amend as the defects in his pleading are not capable of being cured through amendment. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, the Court **RECOMMENDS** that this entire action be dismissed with prejudice and that Plaintiff's motion for temporary restraining order and preliminary injunction,

---

[1] Plaintiff's motion also fails to make the requisite showing, supported by admissible evidence, to obtain a preliminary injunction. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20-4 (2008). However, it is unnecessary to reach the merits of Plaintiff's motions in light of the fact that the jurisdictional issue is fatal to his requests for relief. *Summers*, 555 U.S. at 493; *Mayfield*, 599 F.3d at 969.

filed on October 9, 2018 (Doc. 15) be denied.  The Court also **RECOMMENDS** that Plaintiff's motion for injunctive relief, filed on October 9, 2018, (Doc. 15), be **DENIED** for lack of jurisdiction.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within 21 days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff's failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 8, 2019**           **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE